UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| TIMOTHY M. POFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:15-cv-00405-JMS-MJD |
| | ) | |
| QUICK PICK, LLC, | ) | |
| AHMED SHAKER, | ) | |
| | ) | |
| Defendants. | ) | |

# FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff Timothy Poff brought this lawsuit alleging that Defendants Quick Pick, LLC ("Quick Pick") and Ahmed Shaker failed to pay Mr. Poff his required minimum wage and terminated him in retaliation for filing this lawsuit, in violation of the Fair Labor Standards Act ("FLSA") and state law. Quick Pick, LLC was defaulted for failure to plead or otherwise contest Mr. Poff's allegations. Mr. Poff's claims against Mr. Shaker proceeded to a bench trial, which was held on November 13, 2018. The Court briefly recounts the procedural history of this matter before setting forth its findings of fact and conclusions of law.

## I.
### PROCEDURAL HISTORY

Mr. Poff filed his original Complaint on December 11, 2015, [Filing No. 1], and filed his Amended Complaint on January 11, 2016, [Filing No. 6]. Mr. Poff's Amended Complaint alleges that Mr. Shaker and Quick Pick are jointly and severally liable for failing to pay him the minimum wage under the FLSA, Indiana Minimum Wage Law ("IMWL"), and Indiana Wage Payment Statute ("IWPS") and for retaliating against him for exercising his rights under the FLSA. [Filing No. 6.]

On October 27, 2016, the Clerk entered default against Quick Pick. [Filing No. 33.] On March 9, 2017, counsel appeared for Quick Pick and Mr. Shaker. [Filing No. 40.] On April 18, 2017, Judge Larry J. McKinney held a hearing on Mr. Poff's Motion for Default Judgment and Damages as to Quick Pick. [Filing No. 54.] Mr. Poff, Mr. Shaker, and Quick Pick (by Mr. Shaker as its representative) all appeared in person and by counsel. [Filing No. 54.]

On April 27, 2017, Judge McKinney issued his Findings of Fact and Conclusions of Law following the hearing on default judgment and damages as to Quick Pick. [Filing No. 57.] With Quick Pick's liability determined by the default, Judge McKinney first found that Quick Pick violated the FLSA by underpaying Mr. Poff by $1,561.74. [Filing No. 57 at 4.] Judge McKinney awarded "an additional equal amount as liquidated damages" for a total of $3,123.48 for Mr. Poff's FLSA minimum wage claim. [Filing No. 57 at 4.] Second, as for Mr. Poff's FLSA retaliation claim (with liability again decided based upon the allegations in the Amended Complaint), Judge McKinney awarded Mr. Poff $15,000, based upon the undisputed evidence that Mr. Poff took 50 weeks to replace his part-time job at Quick Pick with a janitor position at a masonic lodge. [Filing No. 57 at 3-4.] After providing Defendants with an opportunity to show cause why partial final judgment should not issue, [Filing No. 57 at 5], the Court entered judgment on May 25, 2017 against Quick Pick in the amount of $18,123.48, [Filing No. 60], and awarded Mr. Poff fees and costs on May 30, 2017 in the amount of $15,195, [Filing No. 61].

Defendants' counsel was granted leave to withdraw on August 7, 2017, [Filing No. 73], and since then Mr. Shaker has proceeded *pro se*. This matter was reassigned to the undersigned on September 28, 2017. [Filing No. 82.] On October 18, 2018, following briefing by the parties, the Court ruled that Judge McKinney's April 27, 2017 Order conclusively established "the issue of damages and the facts concerning Mr. Poff's hours worked and wages paid." [Filing No. 106

at 8.] Remaining for trial was "Mr. Shaker's individual liability under the FLSA, IMWL, and IWPS," including "Mr. Shaker's personal liability for any retaliation under the FLSA." [Filing No. 106 at 8.]

At trial, held on November 13, 2018, counsel for Mr. Poff confirmed that, in addition to his FLSA retaliation claim, Mr. Poff was pursuing his minimum wage claim under just two alternative statutes, the FLSA and the IMWL, and was not pursuing any claim under the IWPS. The parties presented evidence and argument, and the Court took the matter under advisement. [Filing No. 115.] The issue of Mr. Shaker's personal liability under the FLSA and IMWL is ripe for determination.

## II.
## FINDINGS OF FACT[1]

Mr. Shaker has, at various points in this litigation, suggested that he requires an interpreter because he is unable to sufficiently understand or speak the English language. [Filing No. 100; Filing No. 95 at 2-5; Filing No. 114.] The Court had the opportunity to observe Mr. Shaker and his testimony, as with the testimony of all of the witnesses at trial, and notes that it had no difficulty understanding Mr. Shaker, who ably participated in the proceedings.

As the Court discusses below, Mr. Poff presented some evidence of certain facts which were necessary to support his claims, but failed, in light of the Court's assessment of the countervailing evidence presented by Mr. Shaker, to meet his burden of proving the existence of the facts by a preponderance of the evidence. Indeed, counsel for Mr. Poff candidly admitted at trial that the parties did not conduct any discovery in this case. As the Court noted at trial, that was counsel's choice. This decision appears to have substantially limited the evidence available

---

[1] Any finding of fact should be deemed a conclusion of law to the extent appropriate.

for Mr. Poff's presentation at trial. Based upon the testimony and documentary evidence presented at trial, and having evaluated the credibility of the witnesses' testimony, the Court finds as follows.

Mr. Poff worked part time from approximately April 2015 to January 2016 for Quick Pick, a convenience store located in the Honey Creek Square Mall in Terre Haute, Indiana. Mr. Shaker was the sole member of Quick Pick. During his time with Quick Pick, Mr. Poff also worked full time for Burger King. Quick Pick had gross annual sales of no more than $60,000 and at least three employees during Mr. Poff's tenure. These employees included Sharon Rosa and Amanda Melton.

Ms. Melton oversaw the day-to-day operations of Quick Pick, though she was not a member of the LLC.[2] This included responsibility for most personnel decisions, including hiring Mr. Poff, writing checks (which Mr. Shaker usually signed or had Ms. Melton sign on his behalf), supervising employees, negotiating the lease with the mall, and scheduling employees' work hours. Ms. Melton observed and grew concerned with Mr. Poff's hygiene, particularly because Quick Pick employees sold and served prepared food products. Ms. Melton also instructed Mr. Poff on several occasions not to wear his Burger King uniform to his shift at Quick Pick. At some point, Mr. Poff told Mr. Shaker that he was seeking legal counsel because he believed that he was being underpaid.

Mr. Poff filed this lawsuit on December 11, 2015. At the end of 2015 or beginning of 2016, Ms. Melton suspended Mr. Poff for one week due to his repeated failure to adhere to Quick Pick policies. Mr. Poff was terminated by Mr. Shaker, via text message, thereafter.[3] Unlike the

---

[2] The Court finds Ms. Melton to be a highly credible witness, and credits her testimony herein.

[3] At trial, Mr. Shaker introduced evidence suggesting that either Ms. Melton terminated Mr. Poff or Mr. Poff left his job voluntarily after being suspended. The Court's finding that Mr. Shaker terminated Mr. Poff via text message is based upon an admission from Mr. Shaker's Answer. [Filing No. 6 at 2.] Mr. Shaker and Ms. Melton testified at trial that Ms. Melton, with Mr. Shaker's

4

printout of alleged text messages regarding the hours Mr. Poff worked, admitted as Plaintiff's Exhibit 1 at trial, Mr. Poff did not retain, offer, or otherwise preserve the termination text message he received from Mr. Shaker—despite having retained counsel and filed this lawsuit by that point in time.[4] The Court finds that this omission undermines Mr. Poff's credibility, both generally and specifically as to his contention that he was terminated for complaining about being underpaid, when considered along with the demeanor of all of the witnesses and the other evidence presented at trial.

## III.
### CONCLUSIONS OF LAW[5]

Counsel for Mr. Poff conceded during closing argument that Mr. Poff did not meet his burden of demonstrating that Quick Pick had an "annual gross volume of sales made . . . [of] not less than $500,000," as required to maintain his FLSA minimum wage claim. 29 U.S.C. § 203(s)(1)(A)(ii). The Court therefore limits its discussion to Mr. Poff's IMWL minimum wage and FLSA retaliation claims.

### A. IMWL Minimum Wage Claim

The IMWL requires "every employer employing at least two (2) employees during a work week" to compensate each employee at the federal minimum wage. Ind. Code § 22-2-2-4(h). The term "employer" is defined as "any individual, partnership, association, limited liability company,

---

permission, authored all of Mr. Shaker's filings in this matter. The Court need not address the impact, if any, of the testimony regarding the authorship of Mr. Shaker's filings in light of the findings and analysis set forth in this Order.

[4] Along these same lines, the Court finds Plaintiff's Exhibit 1 printout to be largely unworthy of credence, inasmuch as the printout lacks any phone number identifiers, time stamps, or any other information (aside from the plain text) which would warrant any credibility, nor was any evidence presented as to why such metadata were either omitted or missing.

[5] Any conclusion of law should be deemed a finding of fact to the extent appropriate.

corporation, business trust, the state, or other governmental agency or political subdivision," except that it excludes "any employer who is subject to the minimum wage provisions of the federal [FLSA]." Ind. Code § 22-2-2-3. The IMWL applies here because Quick Pick had at least two employees while it employed Mr. Poff and was not subject to the FLSA minimum wage provision because it did not have annual gross sales of at least $500,000. The only remaining issue is whether Mr. Shaker was a joint, "individual" employer of Mr. Poff under the IMWL.

The Indiana Supreme Court has not directly addressed the factors the Court should consider in determining when a member of an LLC may be held liable as an individual employer under the IMWL, though the Seventh Circuit has observed that "the Indiana Supreme Court does not think it unfathomable that an employee plaintiff could recover from both a company and the individuals who control a closely-held company under the IMWL." *Wharton v. Furrer*, 620 F. App'x 546, 549 (7th Cir. 2015) (citing *Meyers v. Meyers*, 861 N.E.2d 704, 708 (Ind. 2007), in which the Indiana Supreme Court reversed a dismissal for failure to state a claim where the plaintiff alleged that he was employed by a corporation and individual shareholders). Courts applying the FLSA, which expressly provides that "any person acting directly or indirectly in the interest of an employer in relation to an employee" may be held liable as an "employer," 29 U.S.C. § 203(d), generally evaluate the "economic realities of the employment relationship" to determine whether an individual may be held liable for the underpayment of wages. *Dole v. Simpson*, 784 F. Supp. 538, 545-46 (S.D. Ind. 1991) (collecting authorities). This analysis considers the ownership interest held by the individual, the individual's operational control over day-to-day functions, and the individual's control over financial policies. *Id.* "The FLSA definition of an 'employer' is a sui gener[i]s concept, not bounded by tests provided by the common law." *Id.* at 545.
6

Unlike the FLSA, however, the IMWL does not contain the provision (defining employer to include "any person acting directly or indirectly in the interest of an employee") that gives rise to the "economic realities" test. Rather, the IMWL definition simply includes "any individual" in its list of potential employers. Unlike with the FLSA, the indications from Indiana courts are that they would likely interpret the IMWL by reference to "tests provided by the common law." *Dole, 784 F. Supp. at 545*. Though the IMWL purports to define "employer," the statute does no more than list the various types of entities who may in fact be an employer and then exclude certain entities from the definition. *See* Ind. Code § 22-2-2-3. The Indiana Wage Payment Statute ("IWPS") similarly fails to define "employer," *see* Ind. Code § 22-2-5-2, and in interpreting the IWPS, the Indiana Supreme Court and the Indiana Court of Appeals have observed that "the term employer is a term of art with a distinct meaning at common law." *Black v. Employee Sol'ns, Inc.*, 725 N.E. 2d 138, 141 (Ind. Ct. App. 2000); *Mortgage Consultants, Inc. v. Mahaney*, 655 N.E. 2d 493, 495 (Ind. 1995) ("The term 'employee,' however, is a term of art with a distinct meaning at common law."). In the IWPS context, the Indiana Court of Appeals looked to whether the parties intended to create an employment relationship and the degree of control that the putative employer had over the employees. *Black*, 725 N.E.2d at 141-44. The "control" factor requires the Court to evaluate considerations such as the individual's role in firing decisions, payment, and establishment of work boundaries and day-to-day operations. *Id.* at 143-44.

*Black* and *Mortgage Consultants* strongly suggest that the Indiana Supreme Court would turn to these common-law factors to assess whether Mr. Poff was an employee of Mr. Shaker. Under these factors, the Court concludes that Mr. Poff has not met his burden of showing that Mr. Shaker was an individual employer under the IMWL. No evidence suggests that Mr. Poff and Mr. Shaker intended for Mr. Poff to work for him individually. And while Mr. Shaker had the authority

7

to make personnel decisions (such as terminating Mr. Poff), Ms. Melton likewise had the authority to make personnel decisions (such as hiring Mr. Poff). Moreover, Ms. Melton had primary control over and responsibility for day-to-day operations and work oversight. For the sake of completeness, even if the broader "economic realities" test from the FLSA applied to the IWML, the evidence at trial established that Ms. Melton was in charge of most of the financial decisions (such as negotiating the lease with the mall) and nearly all day-to-day operational decisions. In sum, Mr. Shaker's status as sole owner of Quick Pick, his authority to terminate employees, and his occasional involvement in business matters are insufficient to turn him into an individual employer, no matter which test applies under the IMWL. Mr. Shaker is entitled to judgment on Mr. Poff's IMWL minimum wage claim.

**B. FLSA Retaliation Claim**

The FLSA provides that it is "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA.]"[6] 29 U.S.C. § 215(a)(3). Under this provision, Mr. Poff bears the burden of demonstrating that his protected activity (complaining about being underpaid, retaining counsel, and/or filing this lawsuit) was a but-for cause of his suspension and/or termination, and not a mere motivating factor in these employment decisions. *See, e.g.*, *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) (holding that Title VII, which provides that it is unlawful to discriminate against an employee "because [the employee] has opposed" any unlawful employment practice, requires proof that the retaliation would not have occurred "but for" the protected activity); *Head v. Prof'l Transp., Inc.*,

---

[6] The FLSA retaliation provision, unlike its minimum wage provision, is not limited to defendants who meet the $500,000 annual gross sales threshold. Sapperstein v. Hager, 188 F.3d 852, 856 (7th Cir. 1999).

2015 WL 5785797, at * 4 (S.D. Ind. 2015) (citing *Nassar*, collecting authorities, and noting that that the Title VII retaliation provision parallels the FLSA retaliation provision).

In this case, the Court finds that Mr. Poff has failed to prove by a preponderance of the evidence that his protected activities were a but-for cause of his suspension and termination. At trial, Mr. Poff's counsel suggested that Mr. Shaker's Answer was tantamount to an admission that Mr. Shaker fired Mr. Poff because of his protected activities. The Court disagrees. Mr. Shaker's Answer states that "Timothy Poff was put on suspension 1/1/16 due to his action which included but were not limited to, slander of me and my business, disregard to fllowig [sic] the rules and complete disregard to the health protacal [sic] that the job required as well as insubordination." [Filing No. 27 at 2.] The Answer lists disregard for rules, disregard for health protocols, and insubordination as explanations for Mr. Poff's suspension—all of which are consistent with Ms. Melton's explanation for why Mr. Poff was disciplined and ultimately terminated. The only part of the Answer that arguably supports Mr. Poff's argument is the explanation that Mr. Poff was suspended for "slander of me and my business," but, at most, the statement suggests that Mr. Poff's speech (and perhaps his protected activities) may have been a motivating factor for his suspension. That Mr. Poff's protected activity may have been one motivating factor for his suspension is not enough to establish liability, and the statement does not conclusively admit that Mr. Poff's protected activity was a but-for cause of his suspension or termination. The Court concludes that Mr. Shaker's Answer did not admit to retaliating against Mr. Poff.

This leaves Mr. Poff's testimony that Mr. Shaker told him that he was suspended due to his decision to retain counsel. And in contrast to Mr. Poff's testimony, Ms. Melton credibly testified that Mr. Poff was suspended and ultimately terminated for hygiene and performance issues while working for Quick Pick. Thus, having weighed all of the evidence, the Court

concludes that Mr. Poff has not met his burden of proving, by a preponderance of the evidence, that he would not have been fired but for his protected activities. Therefore, Mr. Shaker is entitled to judgment on Mr. Poff's FLSA retaliation claim.

## IV.
### CONCLUSION

For the reasons described above, the Court concludes that Mr. Shaker is entitled to judgment in his favor on Mr. Poff's Amended Complaint. Final judgment will issue accordingly.

Date: 11/20/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution to Registered Counsel via CM/ECF & via U.S. Mail to:**

Ahmed Shaker
3336 N. Waverly Rd.
Lansing, MI 48906